IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHERINE GRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 05 C 59 |
| ) | |
| JEFFREY BURKE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sherine Gray brought this action against defendants, the City of Chicago and Chicago police officers Jeffrey Burke and Jessica Gray, alleging that defendants violated her civil rights under 42 U.S.C. § 1983 by falsely arresting her for theft of services, intentionally and maliciously initiating criminal proceedings against her, and using excessive force during her arrest. Plaintiff also brings state law claims of malicious prosecution, battery, false arrest, and false imprisonment. Defendants now move for summary judgment under Fed. R. Civ. P. 56 on all but the excessive force and battery claims. For the following reasons, defendants' motion is granted.

## BACKGROUND

The following background is taken from the parties' Rule 56 statements and the attached exhibits. Facts are construed and reasonable inferences are made in the light most favorable to plaintiff, the non-moving party. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

On January 18, 2004, plaintiff visited XSport Fitness, a health club in Chicago, and parked her car in an adjacent parking facility (def. facts, ¶ 6; plf. cplt., ¶ 7). Plaintiff had an XSport employee stamp her parking ticket (def. facts, ¶ 7). Pursuant to XSport's lease, club

members, employees, customers and invitees were granted two hours of free parking per day (plf. facts, ¶ 1). As she was preparing to leave XSport, plaintiff could not find her validated parking ticket (def. facts, ¶ 8). An XSport employee provided her with a receipt to give to the parking attendant to demonstrate that she had been at the club (plf. facts, ¶ 3; plf. cplt. at ¶ 9).

After obtaining the receipt, plaintiff returned to her vehicle and proceeded to exit the parking facility. She stopped at a gate and showed the receipt to the parking attendant, Altaf Patel, who was stationed in a booth (plf. facts, ¶ 6). Patel would not accept the receipt and instead informed plaintiff that she must either find her validated parking ticket or pay the maximum daily rate, which was $21 (Patel dep., p.18, lines 9-14, 20, lines 18-21; plf. dep., p.47, lines 6-10). Plaintiff asked Patel to let her leave without paying, but Patel refused (def. facts, ¶¶ 13, 14; plf. dep., p.47, lines 23-24; p.48, lines 1-3). Patel stated that he gave Gray a form to fill out in order to report the lost ticket (Patel dep., p.20, lines 5-8; Key dep., p.22, lines 20-22), but plaintiff did not complete the form and returned it to Patel (Patel dep., p.23, lines 5-11). Since plaintiff insisted on not paying $21, and could not produce her validated ticket, Patel asked his co-worker in an adjacent booth to contact their manager (def. facts, ¶ 15; Patel dep. p.24, lines 15-23). Patel stated that, instead, his co-worker contacted the building security officer, Michael Key, who arrived within minutes (def. facts, ¶ 16; Patel dep, p.25, lines 1-2).

Upon arriving, Key first directed cars that had backed up behind plaintiff's car to the second exit lane (Key dep., p.12, lines 21-24). Key observed that plaintiff was very uncooperative and was screaming and yelling (*id.* at p.14, lines 2, 13-16; p.15, lines 6-18), but Patel did not remember if plaintiff was screaming (Patel dep., p.30, lines 18-20). At the time Key knew that a separate procedure was followed when XSport members lost their parking tickets. He explained that after a member provided the parking attendant with a membership

ID card number and a photo ID, XSport would pay the fees (Key dep., p.16, lines 4-11). Key stated that both he and Patel explained this policy to plaintiff several times (Key dep., p.17, lines 22-23), but plaintiff was unable to comply because she had left her driver's license inside the club (plf. dep., p.41, lines 9-14). Key then informed plaintiff that he would call the police if she did not pay, and plaintiff apparently invited him to do so (Key dep., p.23, lines 18-23). Unable to resolve the situation, Key called the police, telling them that he had a parking patron who refused to pay (def. facts, ¶ 21).

Defendant Burke was the first officer to arrive at the parking garage and he initially spoke with Key, who told him that plaintiff could not produce her parking ticket and refused to pay the $21 fee (def. facts, ¶¶ 22-24). When Burke arrived, plaintiff was still in her vehicle, parked next to Patel's booth (Burke dep., p.9, lines 5-9). Key states that plaintiff asked Burke what would happen if she drove through the gate, and Burke responded that he would arrest her (Key dep., p.31, lines 3-15). During the discussions, additional police officers, including defendant Gray, arrived at the scene. Plaintiff never showed the police officers her receipt from XSport (plf. dep., p.83). Burke told plaintiff that she had to pay the $21 or find the ticket, and then, according to plaintiff, gave her permission to go and look for her ticket (plf. dep., p.82, lines 20-23). Plaintiff continued to maintain that she would not pay the $21 (plf. dep., p.85).

After receiving permission from Burke to look for her ticket, plaintiff backed her car out of the exit lane and proceeded to walk toward the health club entrance (plf. dep., pp.83, 86, lines 21-23). She stated that she was furious with Key and was pretty sure that she said something to him in a quiet tone as she walked by, but could not recall exactly what she said (plf. dep., p.86, lines 21-24, 87, lines 5, 10-15). At the time, Key was standing next to Burke, close to the club entrance (*id.* at p.87, lines 19-20). Burke stated that when plaintiff

approached, she said, "fuck you. I'm not paying the ticket," and then proceeded to walk as if she was going to exit the facility (Burke dep., p.26, lines 10-15). Plaintiff states that after she mentioned something to Key, Burke grabbed one arm and then Gray grabbed her other arm (plf. dep., p.89, lines 21-23). Plaintiff states that Burke told her that she was under arrest, but did not tell her the charges. (plf. dep., p.91). While the officers had hold of plaintiff's arms, and attempted to handcuff her, Burke allegedly kicked out plaintiff's legs from underneath her, causing her to fall face-first to the concrete. (plf. dep., pp.98, 106-07). Plaintiff suffered injuries to her face and her leg, and was taken to the hospital for treatment.

Two complaints were brought against plaintiff. Key signed a complaint against plaintiff for theft of services (def. facts, ¶ 28), and the officers lodged a complaint against plaintiff for resisting arrest (def. ex. H). On July 13, 2004, plaintiff pled guilty to disorderly conduct. As a condition of her plea, plaintiff paid $21 to the parking lot (def. ex. I, p.3, lines 9-13). She also received a one-year term of supervision and paid a $130 fee (*id.*, lines 5-7).

## DISCUSSION

Summary judgment is proper when the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We do not make credibility determinations or weigh evidence when ruling on a summary judgment motion. Anderson, 477 U.S. at 255. Indeed, it is error to make credibility determinations at the summary-judgment stage. Morfin v. City of E. Chicago, 349 F.3d 989, 999 (7th Cir. 2003). Our only task is to "decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Facts and inferences are construed in the light most favorable to

plaintiffs, the nonmoving parties. Darnell v. Thermafiber, Inc., 417 F.3d 657, 659 (7th Cir. 2005).

At the heart of plaintiff's section 1983 claims is her allegation that defendants arrested her for theft of services, without probable cause (see count I, ¶ 31 ("Plaintiff had not committed any theft of services and defendants did not have probable cause to arrest her"); count II, ¶ 47 (alleging that defendants "falsely, intentionally, and maliciously institut[ed] criminal complaints against plaintiff for theft of services and for resisting arrest by lying about the events in question")). This contention is also the basis of plaintiff's state law false arrest, false imprisonment, and malicious prosecution claims (see count IV, ¶ 79 ("At no time did defendants have probable cause to arrest plaintiff."); count VI, ¶ 115 ("Defendant police officers arrested and caused the imprisonment of plaintiff without probable cause and did so willfully and maliciously")). In primary support of their motion for summary judgment, defendants argue that there was probable cause for plaintiff's arrest, which precludes plaintiff's section 1983 false arrest claim, as well as her state law false arrest, false imprisonment and malicious prosecution claims. According to defendants, the existence of probable cause also entitles them to qualified immunity. Defendants further argue that plaintiff cannot base false arrest and false imprisonment claims on the theft of service charge after she pled guilty to disorderly conduct.

Plaintiff cannot maintain a section 1983 action for false arrest if there is probable cause for her arrest. Fernandez v. Perez, 937 F.2d 368, 370 (7th Cir. 1991); Kelley v. Myler, 149 F.3d 641, 646 (7th Cir. 1998) (citing Jones by Jones v. Webb, 45 F.3d 178, 181 (7th Cir.1995)); Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution"). Police officers have "probable cause to arrest

when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense." Sheik-Abdi v. McClellan, 37 F.3d 1240, 1246 (7th Cir. 1994) (internal quotation omitted); Hughes v. Meyer, 880 F.2d 967, 969 (7th Cir. 1989). A finding of probable cause does not require evidence that would support a conviction. United States v. Funches, 327 F.3d 582, 586 (7th Cir. 2003); Hughes, 880 F.2d at 969. In determining whether probable cause exists, courts must look at the facts from the perspective of the arresting officer, and not as an omniscient observer. Sheik-Abdi, 37 F.3d at 1246; Kelley, 149 F.3d at 646; Devenpeck v. Alford, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest"). Probable cause is a zone, rather than a precise point, and within that zone there is room for reasonable error. Kelley, 149 F.3d at 646; Hughes, 880 F.2d at 969. Probable cause typically presents questions fit for the jury, but when the facts are undisputed, probable cause may be resolved as a matter of law. Penn v. Harris, 296 F.3d 573, 577 (7th Cir. 2002).

Plaintiff strenuously argues that there was not probable cause to arrest her for theft of services. We look to the requirements of state law in order to determine whether there was probable cause. Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 761 (7th Cir. 2006). Under 720 ILCS 5/16-3, a "person commits theft when he obtains the temporary use of property, labor or services of another which are available only for hire, by means of threat or deception or knowing that such use is without the consent of the person providing the property, labor or services."

If our analysis involved determining the existence of probable cause to arrest for theft of services in the first instance, we would emphasize the factual disputes that weigh in favor

of giving the issue to the jury. It is true that plaintiff repeatedly said that she was not going to pay for the parking, but she also reasonably believed that as a guest at XSport (and a new member according to her friend Paul Levy (Levy, dep. p.18, lines 16-19)), she was entitled to two free hours of parking, and thus had no intention of depriving the parking facility of services. *See* People v. Mills, 356 Ill.App.3d 438, 825 N.E.2d 1227, 1232, 292 Ill.Dec. 216 (Ill. App. 2d Dist. 2005) ("Where there is an honest dispute in a defendant's mind as to the rightful cost of services rendered, and the defendant intends to pay the amount he honestly believes is proper at the time he obtains the services, a conviction of theft of services cannot stand."). Under plaintiff's version of events, defendant Burke gave her permission to go back into the club in order to look for her parking ticket, but arrested her before she even entered the club. Moreover, it is unreasonable to think that plaintiff would leave her car inside the parking lot in order to steal two hours of free parking. Yet, a person commits theft of services when they obtain the temporary use of property by means of threat or deception. There are disputes as to whether plaintiff was uncooperative. She did block one of the two exit lanes for a period of time and told Patel and Key to let her exit. She professed to be a gym member but had neither driver's license nor gym membership card. She did not show the XSport receipt to the police. A jury could find that a reasonable officer believed that she was trying to use deception to obtain free parking. Regardless of these disputes, under the circumstances presented our inquiry does not involve an independent evaluation of probable cause.

When plaintiff pled guilty to disorderly conduct, she admitted that there was probable cause for that charge, and for the underlying charges. Shkrobut v. Chicago, 2005 WL 2787277, *2 (N.D. Ill. 2005) ("A criminal conviction based upon a guilty plea conclusively establishes for purposes of a subsequent civil proceeding that the defendant engaged in the criminal act for which he was convicted"). It is true that plaintiff did not plead to the theft of

services or resisting arrest charges. It is also true that plaintiff was not incipiently charged with disorderly conduct. But the disorderly conduct offense arises from the same incident and is related to the initial charges. The prosecution SOL'd (struck with leave to reinstate)[1] the charge and added the disorderly conduct charge (def. ex. I. p.2). Evidencing the connection between the offense establishing probable cause (disorderly conduct) and the charges stated by the arresting officers (theft of services and resisting arrest) is the fact that plaintiff was required to pay $21 as a condition of her guilty plea. Plaintiff suggests that the payment of $21 was not specifically ordered by the court, unlike the term of supervision and the $130 fine. Even though the judge did not explicitly include the $21 in his oral order, the on-the-record discussion illustrates that it was a condition to the plea agreement that plaintiff did not contest and it was also described by the prosecution as "restitution." *See* def. Ex. I at 2-3. Burke learned from Key and from his own first-hand observation that plaintiff refused to pay the $21 fee and that she did not produce a gym membership card or driver's license. There is no suggestion that the police obtained additional evidence after plaintiff's arrest that was used in support of her disorderly conduct conviction. Corbett v. Biggs, 2005 WL 991903, *7 (N.D. Ill. 2005) (citing Currier v. Baldridge, 914 F.2d 993 (7th Cir. 1990)).

Further, a prosecutor reviewing plaintiff's conduct at the parking facility could find sufficient evidence to justify a plea agreement based on a disorderly conduct charge without additional evidence or investigation. *See* Askew v. Chicago, 440 F.3d 894, 896 (7th Cir. 2006)

---

[1] On the nature and impact of an SOL, *see* Mitchell v. Keenan, 50 F.3d 473, 475 (7th Cir. 1995), which observes:
> The SOL is an odd and much misunderstood creature of Illinois procedure. It is purely a common-law creation (the Illinois Code makes no mention of the SOL) and is used almost exclusively in criminal matters. People ex rel. DeVos v. Laurin, 73 Ill. App. 3d 219, 391 N.E.2d 164, 166, 29 Ill. Dec. 5 (Ill. App. Ct. 1979). Its effect is to remove the case from the trial court's docket while the prosecution technically remains pending. *Id.* The prosecution, however, may not proceed until the case has been placed again on the court's docket. People v. Kidd, 357 Ill. 133, 191 N.E. 244, 246 (Ill. 1934). The prosecutor must move for such a reinstatement, but the trial court retains its discretion such that the charge may only be reinstated for good cause.

("The Constitution permits [police] to initiate the criminal process and leave the sifting of competing claims and inferences to detectives, prosecutors, judges, and juries in the criminal prosecution"). Disorderly conduct occurs when a person acts in an unreasonable manner that disturbs or alarms another and threatens to provoke or provokes a breach of the peace. *See* 720 ILCS 5-26-1(a)(1); Penn v. Harris, *supra*; Kies v. City of Aurora, 156 F. Supp. 2d 970, 985 (N.D. Ill. 2001). But we need not review whether plaintiff's conduct was in fact disorderly under Illinois law because she admitted as much when she pled guilty to that charge.

The fact that plaintiff was not initially charged with disorderly conduct does not mean that probable cause established by her conviction did not apply to the original charges, specifically theft of services. In Devenpeck, the plaintiff was pulled over on suspicion of impersonating a police officer, but was arrested for recording his roadside conversation with the police officer, which the officer concluded was in violation of the state privacy act. The plaintiff was never charged with impersonating a police officer. The Supreme Court held that the offense establishing probable cause need not be related to the offense cited by the arresting officer. Devenpeck, 543 U.S. at 153-54. According to the Court, the rule requiring a close relation between the two offenses was inconsistent with precedent that held that the arresting officer's subjective motivations are irrelevant to the probable cause inquiry. And in Shkrobut, the plaintiff was originally charged with two counts of assault and two counts of battery. One count of battery was amended to disorderly conduct, and plaintiff ultimately pled to that charge. Chronologically, plaintiff's claim resembles the events in Shkrobut, in that probable cause was established by the conviction of an offense not initially named by the arresting officers. Since pleading guilty to the disorderly conduct charge established probable cause for the theft of services charge, plaintiff is now precluded from bringing a section 1983 claim for false arrest for theft of services. *See also* Pourghoraishi, 449 F.3d at 762 (emphasis

in original) ("The actual existence of *any* probable cause to arrest precludes a § 1983 suit for false arrest").

There is yet another reason why plaintiff's false arrest claim cannot proceed. Under Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), plaintiff must first show that her conviction or sentence has been reversed, expunged or declared invalid before she can recover damages for false arrest. Plaintiff argues that her false arrest claim does not implicate her conviction for disorderly conduct because it is based on the arrest for theft of services. We observed above how all charges–those offered by the arresting officers and the offense of conviction that establishes probable cause–arise from the same episode. Devenpeck instructs that probable cause exists for unrelated offenses, so long as there is probable cause for one offense. The scope of Devenpeck is undefined, but we need not test its bounds because the theft of services and disorderly conduct charges are related, for reasons discussed above. For plaintiff to recover damages, she must show that no probable cause existed, and she cannot do that without undermining her conviction.

State court is the proper place for challenging the state law offense in the first instance. Schlessinger v. Salimes, 100 F.3d 519, 522-23 (7th Cir. 1996) ("a suit under § 1983 is not the right way to test the meaning of state law, as if the police violate the fourth amendment every time they err in interpreting a statute"). Further, a state court defendant's success in proving that there was no probable cause for an arrest, paves the way for a section 1983 false arrest claim. But an admission of probable cause blocks a plaintiff's path to recovery. At bottom, a defendant cannot admit that probable cause exists in state court, and then, as a plaintiff in federal court, deny its existence in order to recover damages.

The existence of probable cause also entitles defendants to qualified immunity, which is "an additional layer of protection against civil liability." Hughes, 880 F.2d at 970. Police

officers performing discretionary functions "enjoy qualified immunity from suit unless it would have been clear to a reasonable police officer that, given the situation she confronted, her conduct violated a constitutional right." Pourghoraishi, 449 F.3d at 761. Qualified immunity shields officers who correctly determine that probable cause exists, and also those who "reasonably but mistakenly conclude that it does." Spiegel v. Cortese, 196 F.3d 717, 723 (7th Cir. 1999); *see also* Wollin v. Gondert, 192 F.3d 616, 622-23 (7th Cir. 1999). In order to surmount the qualified immunity defense, plaintiff must show that her rights were violated and that the "law concerning [her] asserted right was clearly established at the time the challenged conduct occurred." Mustafa, 442 F.3d at 548; Sornberger v. City of Knoxville, 434 F.3d 1006, 1013 (7th Cir. 2006). If there is no merit to plaintiff's constitutional claim, then we need not inquire whether the purported right was clearly established. Pourghoraishi, 449 F.3d at 761. Plaintiff has a clearly established right to not be arrested without probable cause, but by pleading guilty to the disorderly conduct offense she admitted to the existence of probable cause. Even if, at the time of arrest, there was no probable cause to arrest for theft of services, plaintiff was also charged with resisting arrest, and an objective officer may have reasonably believed that she had also committed the offense of disorderly conduct. *See* Mustafa, 442 F.3d at 549. Thus, qualified immunity serves as yet another barrier between plaintiff and recovery on her false arrest claim.

In sum, the presence of probable cause, the doctrine of Heck v. Humphrey, and the qualified immunity defense, require that defendant's motion for summary judgment on plaintiff's section 1983 false arrest claim be granted. The existence of probable cause also bars the state law false arrest and false imprisonment claims. Kincaid v. Ames Dept. Stores, Inc., 233 Ill. App. 3d 555, 670 N.E.2d 1103, 1109, 219 Ill. Dec. 215 (Ill. App. 1st Dist. 1996); Martel Enterprises v. Chicago, 223 Ill. App. 3d 1028, 548 N.E.2d 157, 161, 164 Ill. Dec. 945 (Ill.

App. 1st Dist. 1991).

To prevail on her malicious prosecution claim under Illinois law, plaintiff must show "(1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice on the part of defendant; and (5) damages resulting to the plaintiff." Reynolds v. Menard, Inc., 365 Ill. App. 3d 812, 850 N.E.2d 831, 837, 303 Ill. Dec. 26 (Ill. App. 1st Dist. 2006) (quotation omitted). Plaintiff cannot show the absence of probable cause in light of the above-discussed reasons. Moreover, plaintiff cannot show that proceedings terminated in her favor. Even if proceedings are voluntarily dismissed or withdrawn by the prosecution, they must terminate in a manner that is indicative of plaintiff's innocence. Allen v. Berger, 336 Ill. App. 3d 675, 784 N.E.2d 367, 371, 271 Ill. Dec. 149 (Ill. App. 1st Dist. 2002) (citing Swick v. Liautaud, 169 Ill.2d 504, 662 N.E.2d 1238, 1243, 215 Ill. Dec. 98 (Ill. 1996)); Sparing v. Village of Olympia Fields, 266 F.3d 684, 692 (7th Cir. 2001). A party need not show that he was acquitted on the merits to demonstrate that proceedings terminated in a manner indicative of innocence. Velez v. Avis Rent A Car System, Inc., 308 Ill. App. 3d 923, 721 N.E.2d 652, 655, 242 Ill. Dec. 373 (Ill. App. 1st Dist. 1999). Looking to the circumstances of the state court proceeding (Cult Awareness Network v. Church of Scientology International, 177 Ill.2d 267, 272, 685 N.E.2d 1347, 226 Ill. Dec. 604 (Ill. 1997)), the fact that plaintiff paid $21 to the parking facility indicates that the proceedings with respect to the theft of services charge did not terminate in her favor. By all appearances, the abandonment of the theft of services prosecution resulted in an agreement to plead guilty to disorderly conduct. Since there are no genuine factual disputes as to plaintiff's guilty plea, which establishes probable cause, or regarding plaintiff's payment of $21 to the parking facility, the state law malicious prosecution claim fails as a matter of law.

Plaintiff's federal law malicious prosecution claim meets the same fate as its state law counterpart, but on different grounds. Plaintiff styles count II as a due process violation, and claims that defendants violated her due process rights by intentionally and maliciously instituting criminal complaints against her for theft of services and resisting arrest. Newsome v. McCabe, 256 F.3d 747, 750-51 (7th Cir. 2001), holds that malicious prosecution is not a constitutional tort so long as state law provides a remedy. Bontkowski v. Smith, 305 F.3d 757, 760 (7th Cir. 2002); Griffin v. Chicago, 406 F. Supp. 2d 938, 947 (N.D. Ill. 2005). Even though plaintiff brings count II under the due process clause, she does not identify the deprivation of a fair trial right (Penn, 296 F.3d at 576), and the claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

Oct. 31, 2006.